Okay, terrific. We will call the next case on the calendar for argument, which is Sold Out Productions, LLC v. Anschutz Entertainment Group, Inc. If counsel for appellant is ready to proceed, we'll be happy to hear from you. May it please the court. My name is Nika Aldrich, and I represent Sold Out Productions. At the heart of this case is a non-competition agreement that AEG requires all of its artists to sign as a condition of performing at the Coachella Music Festival, one of the largest open-air music festivals in the world. Non-competition agreements, like the Radius Clause is at issue here, are not uncommon in the industry, but Coachella's Radius Clause is so overbroad that it violates competition laws in both Oregon and California. Coachella's Radius Clause prohibits its artists from performing for other concert promoters in two ways. First, artists who perform at Coachella may not perform at any other festival in all of North America for a period of about six months. That restriction is not limited to the California area where the festival takes place, or even to Coachella's market generally. Festival, in that contract, is defined broadly to cover any event at which four or more artists perform, whether or not they are even on the same stage or in the same location, and whether or not the event is even a music festival in the same way as Coachella. For example, concert series or county fairs seem to fall within their definition of festival. But this illegal clause is not up there. I take it because your remaining claims in this case all speak of intentional interference with contract or prospective advantage, that you believe... Mustn't it be true that Coachella, or AEG, did something wrong other than enter into the contract? Yes, it's their enforcement of the contract. Their selective waiver of the contract. Okay, I want to ask you about both of those things. With respect to selected waiver, how did that harm your client? Well, it's harmful in that it shows that the means... So in Oregon... Intentional interference occurs both if the means is improper and also if the purpose of the enforcement is improper. I understand that. I asked a different question. My question is, how could selective enforcement have harmed your client when your allegation of selective enforcement isn't that they... These people to perform at other concerts other than their own. Yes, I believe that the selective enforcement doesn't necessarily directly harm our client, but it's indicative of an improper purpose. Okay, fair enough. So if selective enforcement didn't harm your client, then something else must have harmed your client. Tell me what else there was that harmed your client with respect to this contract. Instructing those performers not to perform at the sold-out music festival, refusing to provide waivers to the sold-out music festival, whereas they provide waivers if artists perform at AEG venues. Both of those prohibited the artists from performing at our festival. I want to work through the artists because I'm trying... With respect to Caesar, is there any allegation in the complaint at all that he was instructed by AEG not to perform at your festival? No, there's no allegation in the complaint that he was instructed not to. He indicated that he would not perform because of the... Because he had a contract. Correct. Okay. With respect to TZA, T-Z-A... TZA, S-Z-A, yes. Is the only allegation of action by AEG that they refused to provide a waiver? Yes. The sold-out music festival asked for a waiver and they refused to provide a waiver, which is similar to the Edwards case. Okay. And then with respect to tanks and bangas, there's an allegation that they told them to back out of the contract. That's correct, Your Honor. Okay. So with respect to Caesar, what did they do wrong other than enter into the contract? Well, we don't have specific knowledge with respect to Caesar. He was... Or any allegation. We don't have a specific allegation with respect to Caesar that he caused... that they did wrong specifically by any act, indeed, at the time of the contracting with Daniel Caesar. Okay. And with respect to Caesar, is it your position that the failure to give a waiver is wrongful conduct under either Oregon or California law? Yes. I think that the Edwards case shows that. The Edwards case shows that when he went back and asked for... to be allowed out of the contract and was told no and they demanded additional consideration, that was deemed to be a wrongful act warranting a claim for... Who was the plaintiff in the Edwards case? The plaintiff was Edwards himself in that case, but I don't know why that would be... That's my question. With respect to a third party, do you think it's wrongful conduct under Oregon or California law to just simply remind somebody that you're going to hold him to his contract? I don't think that that's... If it's an illegal contract, then yes. It is wrongful to tell somebody that we will enforce an illegal contract. And the case that you have for that position with respect to a third party is what case? Well, for example, the... I mean, on an intentional interference claim, I'm not sure, but the bank card case is an example of intentional interference where... I believe it's intentional interference in the bank card case where a party used an illegal contract and a third party sought to have that contract found invalid. The District of Oregon held that the third party had standing to challenge the validity of the contract. The District of Oregon case. Do you have any other cases, a California case? I don't know that I have a California case, but we have other cases where a third party has been allowed standing or has been deemed to have standing to challenge the validity of a third party contract, such as the Alcoa case that we mentioned in our brief, such as American Greyhound Racing that we raised in our brief. And we also raised other entire contexts where third parties have standing to challenge the legality of contracts. All of antitrust law, all of RICO law, is based on the premise that a third party can say that contract you have with this third party is illegal. I agree with you. And let me just tell you what's concerning me. What concerns me is that, at least with respect to the interference with prospective advantage claims, both California and Oregon require some sort of wrongful act. And I see the wrongful act that you allege with respect to tanks and bangers. That's easy. Somebody said, undo my contract. And the other ones that most you have is somebody who says, I have a contract with someone. He won't let me out of it, and therefore I decline to do business with you. Is that tortious interference? I believe so. I don't see the distinction between a contracting party asking for that versus a third party asking for that as I look at the Edwards case. The distinction there was not part of the rationale that was provided in the Edwards case. If a party enforces an illegal contract, says I'm not going to provide any waiver of this illegal contract, that is wrongful act for purposes of intentional interference claims or unfair competition claims. I would continue, but I sense another question coming. No, no, no. Thank you. You've answered the question. Okay. And, again, I believe that the selective enforcement idea goes to a couple of different issues. First of all, it goes to whether the contracts are reasonable in the first place. I would assert that it's not reasonable, that the scope and bounds of the contract are not reasonable if AEG then lets everybody breach it as long as they do it on AEG's condition. It's also wrongful because it shows or irrelevant because it shows an improper purpose. The purpose of this contract is not to protect Coachella. Otherwise, they would not let Pink and the Bangers perform in their own backyard two days before the performance at Coachella but refused to allow Pink and the Bangers to perform 1,200 miles away one day later. So the selective enforcement here isn't about the wrongfulness itself. It's about an improper purpose. The reason that sold out or the reason that AEP has this contract in place is to tie up 180 of the most popular artists every year and to put them under AEG's umbrella and to only allow them back into the West Coast market if they do so under AEP forms, under AEG's umbrella, in AEG venues, with AEG as the concert promoter, and that puts them directly at odds with small concert promoters throughout the West Coast like sold out music productions that's trying for both this talent or any other talent during those six months of the year. As we've explained, the clause is illegal both in California and under Oregon law, both of which prohibit these types of non-compete agreements as contrary to public policy. And as I explained, to make matters worse, they lock these artists out of the market for months every year and then selectively allow them back into the market but only if they perform for AEG. Let me ask you a question in a little different way. Let's assume these contracts exist and when you go to performers and ask them to perform at SOP, sold out production concerts, they all say, no thanks, I must decline, I have a contract with AEG. Would you have a cause of action? If it's a generic statement, I have to, I cannot do that, I have a contract with them, perhaps not, but here what they've said is I can't do so because of the radius clause. I'm sorry, I didn't phrase my question appropriately. Let's assume that their response was, no, I can't do that because I've entered into a contract with them which has a clause which prohibits me from performing at this time or place. And that's all that occurred. Would you have a claim for tortious interference with either contract or, well, prospective advantage? I think that essentially the fact pattern with respect to Daniel Caesar as it's pleaded in the complaint. And as you and I agreed, I think simply him stating, no, I won't do it because of the radius clause, I don't think we necessarily have a claim there because sold out or because AEG hasn't taken a step, they haven't taken a wrongful act around that time. Their only wrongful act, we would allege, is entering into the radius clause in the first place and they didn't have knowledge at that time. You do believe it's a wrongful act to remind a performer that he has this contract and that you consider it to be valid? I believe it's a wrongful act to enforce the contract and remind... That wasn't the question I asked. The question I asked was, do you believe it a wrongful act to remind an artist that he has signed this contract and that you believe it to be valid? No further steps. Yes, I believe it's wrongful to remind somebody of their obligations under an illegal agreement. And he doesn't have to know that he's about to enter into a contract with this particular plaintiff? I would have to go back and look at the law to see what I think about that fact pattern. I mean, no, they would have to know, right? There has to be a knowledge element, but they would have to know that they're about to enter into a contract with somebody else, which is the fact pattern we have here, of course. And at that point, for purposes of having that party not perform with that third party, for purposes of that, they remind them, oh, you have an obligation to us under an illegal contract. That becomes a wrongful act. So if somebody comes to them and says, you know, I'm looking to perform elsewhere, you know, want to let you know about that, and AEG says, oh, don't forget you have a contract with us, I don't think there's tortuous interference there because AEG under that fact pattern ostensibly doesn't know about, they don't have the knowledge element satisfied. But again, that's not what we're dealing with here with respect to both Tank and the Bangers and CISA. But if, again, I'm not trying to give you a hard time, I'm just trying to understand your position. If somebody, if an artist calls up and says, not just can I generally perform for somebody else, but sold-out productions has called me. And so you then know that sold-out productions has called, and AEG says precisely the same thing, which is you have a contract with us, then you think that's wrongful interference. I believe that's wrongful interference. At that point, you have the knowledge element satisfied, and they are, in effect, enforcing the illegal agreement to prevent that party, pursuant to an illegal agreement, from performing or competing with them by entering into a contract with somebody else. That's correct. Am I correct that you have alleged that this is an illegal contract, but the district court hasn't determined that issue yet? Is that correct? The district court did not reach the issue of the illegality at all, but it is pleaded six ways from Sunday in the complaint. Okay. Unless, Judge Schroeder, do you have further questions? Okay. Why don't we hear from your opposing counsel, and then we will give you some time for rebuttal. Thank you, Your Honor. Thank you. May it please the court. My name is Justin Burnick. I'm from Hogan Levels US LLP. On behalf of the defendant appellees, Anschutz Entertainment Group, Anschutz Corporation, Golden Voice, AEG Presents, and Coachella Music Festival, it's a mouthful, so I'll probably just refer to AEG or Coachella in the course of this argument. I think the court started exactly where I would start. What is the wrongful conduct here? Let me jump in, counsel, because that's not where I would start. Okay. I just want to make sure I understand what's actually before us. As I understand it, the district court dismissed the case solely on standing grounds, never reached any of the questions that Judge Hurwitz was exploring with your opponent. My inclination, but I want to hear your response, would be to not get into at all the question of legality, because it seems to me that that's for a later stage in the case, and that all we are asked to decide here is whether standing existed. Tell me why that's not the right place to start. Perhaps this is a semantic question, because I'm not suggesting that we get into the merits of the particular radius closet issue and whether it's valid. I think what the court was considering is the threshold question, can sold-out satisfy the elements of the tortious interference claims? There are several of those elements. There's intent, there's knowledge, and there's wrongful conduct. I think sold-out has failed to allege any of those. We can start in different places, but they lead to the same- Just so we're on the same page. In your view, the district court's ruling had nothing to do with Article III standing? No, I think it does, but it's a standing question nested within a standing question, Your Honor. This is how the cases interpret it, and we talk about them on pages 27 and 28 of our brief. There's ample case law in this area denying standing to subsequent employers to challenge non-competes. They go through an Article III analysis, but here you have a threshold question as to whether they're standing to challenge the underlying radius clause provision, because that's the alleged wrongful conduct. This isn't a question about generalized questions of harm or injury arising under Article III. This is whether an employer can bring a challenge to a non-compete provision and challenge that provision indirectly through a tort claim rather than directly- That occurs all the time in the antitrust context. Now, I realize the antitrust claims here were dismissed, so surely there must be standing for a third party to claim that a contract between two others injures it. I think, Your Honor, it depends heavily on the underlying substance of the law. I am an antitrust lawyer by training, and the Sherman Act is a different animal than Section 16600 of the California Code. If we're talking about Article III standing, then a third party injured by a contract entered into two other people. Ken has Article III standing to raise that. The Sherman Act couldn't have given Article III standing where it didn't exist before. I'm having a hard time figuring out why there's any Article III standing problem here at all. The real question is the one I think you put your finger on, and what Oxford's asking, and it troubles me too, is did the district judge focus on that at all, or did he just simply say, because you're complaining about a contract between two other people, you have no Article III standing? I think what the district judge did, you have to put this in context for the procedural posture of the case. The case was originally an antitrust case coupled with a frontal challenge brought by a sold-out challenging the validity of these clauses under Oregon common law and Section 16600 of the California Code. And the court dismissed those claims, those subsequent claims, the California 16600 claim and Oregon common law claim, because the case law is unequivocal that subsequent employers do not have standing to bring that challenge. So that's what happened. And then when the complaint was amended and there was a subsequent motion to dismiss, sold-out repackaged those claims and said, fine, we'll drop our direct challenge because we know we can't bring that, presumably. Instead, we'll repackage this claim that we cannot bring directly, indirectly through a tort claim. And that's why this is related to the wrongful conduct element, because the whole basis of the wrongful conduct is the alleged violation of these underlying statutes that sold-out has no standing to challenge. And so that's why I said it's sort of a standing question nestled within a standing question. And that's why the court got to the issue the way it did, because it had already reached the conclusion that sold-out could not bring these claims directly. Well, let me ask you a question then about the intentional interference with contract claim, which is Tank and Bangors. Yes, Your Honor. As I read California law, it says the mere interference alone is enough to state a claim. You don't need wrongfulness. He alleges, the other side alleges, that there was a contract and that your client told Tank and Bangors to renege on the contract. Why doesn't that state a claim for intentional interference with contract? I think it gets to your question, Your Honor, of what is the interference. Yes, tortious interference with contract doesn't require some independent wrong, but it requires an interfering act. The interfering act is, they called him up and said, renege on that contract. Don't go through with it. Your Honor, and we think there's a case on point on this question, and that's the Bernard v. S.B. case, where the court confronts this issue head-on and says that you can't, just the mere invocation of a contract, and that's all that happened here. There was no enforcement. That language is used throughout the briefing. There's no enforcement. That case says, as a matter of law, a party invoking the express terms of a contract has a legitimate purpose and does not expose itself to liability for interference with economic relations. And then it goes on. Stop for a second. It does not expose itself to liability for interference with economic relations. That's a prospective advantage case, isn't it? I believe so, Your Honor. And that's why I asked you a separate question about interference with contract. Wrongfulness is required for interference with, and we may not get to any of those issues, as Judge Watford pointed out, but wrongfulness is required for interference with contractual prospective advantage. And there are cases that say mere invocation of a contract is not enough. But when you get to intentional interference with contract, the California cases, for whatever reason, say wrongfulness is not required. Isn't there classic interference with contract here? You told them to run egg on the contract. Well, so I said, from our vantage point, it's not a question of wrongfulness. It is a question of what the interfering act would be. Because if it's the contract itself, that's not sufficient. So we have to look at this communication that allegedly took place between AEG and Tank and the Bangas. And merely telling Tank and the Bangas, no, you have exclusivity with us, so you can't perform for someone else, is not only something that isn't an interfering act, it's presumptively permissible under California law as a personal services contract. AEG is permitted to enjoin Tank and the Bangas from performing for sold out under the law by a creature of special... Do you agree with Judge Watford that the district court never reached that issue? The judge didn't have to. I do agree, the judge didn't have to. We don't believe that the court can't consider it now for the limited purpose of understanding that this is not a presumptively void contract provision. And that's what makes this very different. Merely declining to waive a facially void in all circumstances provision, or telling someone that a contract provision is binding when it's never binding is one thing, but here there are reasons why under both California and Oregon law this contract provision is valid and lawful and specifically enforceable. And so merely telling someone that this is a contractual obligation is not sufficient. And that's what puts us in the Bernard category. And we have to imagine a world under a contrary rule. A contrary rule would allow any third party who's incidentally damaged by a pre-existing contract to manufacture a tort claim by requesting waiver or having the customer go and say, well, what are my obligations here? If AG says, well, here's your obligations to the contract, all of a sudden there's a tortious interference claim? That's far broader than we read the cases. And the cases, and we collect them on pages 27 and 28, and there's no contrary authority we're aware of, says that third party subsequent employers have no standing to challenge these non-compete agreements, except in a very narrow situation where there's actually been enforcement. And what does enforcement mean in those cases? It's actual or threatened litigation. If AVG had gone out and said, look, we have these non-competes, sold out, you need to get out of the way, we're going to sue you, I think it's pretty clear under the case law that in that situation there could be a colorable tort claim. There's an actual overact, an interfering act, whether it's wrongful for purposes of prospective relations or for interference with contract. That didn't exist here. The Edwards case, the Bancard case that were cited, they're entirely different. Bancard wasn't a tort case, wasn't a non-compete case, and there was threatened litigation. Edwards case involved an employee filing a lawsuit, and not just a mere request to waive, the former employer demanded a new agreement with new consideration to allow the employee out of the non-compete. That's something that is an over-interfering act, whether we're talking about prospective relations or interference with contract. It was not present here. AEG didn't go to tank in the bangers and say, sorry, we'll let you out of the non-compete and you can perform a sold out, but you have to give us some new consideration. That's the Edwards case. Counsel, can you remind me, the Ixchel, if I'm saying the name right, that case of ours in which we certified a question, footnote five of that case I thought was helpful for your opponent, but tell me why there, whatever our court said is not controlling on our facts. So as I understand it in Ixchel, your honor, Ixchel had a relationship with Forward Pharma, Forward Pharma then formed a relationship with Biogen, and in that new relationship, Biogen insisted on an express provision that said you cannot deal with Ixchel. There's no question about knowledge of the relationship at the time that contract was formed. There's no question about intent that we have at issue here. The mere entering into that potentially invalid contract is on its face expressly written into the statute to be targeting Ixchel. The standing question, my understanding, was not at issue, but the most important issue is timing. Let me put my five, counsel, if you've got the case in front of you, because as I understand it, obviously we couldn't have certified the question if we did not first satisfy ourselves that we had jurisdiction. And as I understand it, there was a challenge that was raised to our jurisdiction, and we said no. On these facts, what you're calling the third party, the non-party to the contract, it's a tortious interference claim. Of course they have standing if they're alleging that they were injured. I guess I don't see why that, whatever we said in that footnote, does not control on our facts here for standing purposes. Again, I distinguish between a threshold Article III question about whether they're standing and whether all the other elements of the tort claim are met. Our argument is that the knowledge element, the intent element, and the wrongful conduct element are not met here. We're not making a threshold argument about sold-out potential injury from being denied a relationship with these artists. We're making an argument that arises under those three prongs of the substantive element of the tort. So as I read what we have in mind, that's asking a different question. What do you find in the district court's order that analysis? I'm sorry, which analysis? The analysis that you just made. You said we're not arguing about Article III standing. We're arguing about whether the various elements of intentional interference were met. I think the order is more easily read the way Judge Watford characterized it at the beginning. That's why I'm asking. Yeah, and I'd go back to what I said earlier, that the court was proceeding based on a prior history here of finding that sold-out had no standing to bring the claim directly, and so then it was trying to repackage its claim as a tort claim, and that can't cure the defect. I would submit to the court that it can affirm for reasons that are not expressly written by Judge Mossman in the opinion, and the discussion of this is relatively brief in that opinion, but I don't read Judge Mossman as having ruled out or ruled against us on the arguments that I'm making today. But I think there's a distinction, as I pointed out, between this threshold Article III question of just injury and the separate question of can you satisfy the substantive elements of the tort, and that's why I don't think the generalized Article III, you know, hazy allegations to Article III case law there in sold-out's brief can trump all of the cases, case after case, finding that employers do not have standing to challenge non-competes except in a very narrow situation when there's been actual or threatened litigation, some additional overact. I point back to Bernard, merely invoking the terms of a contract and then telling a party what the contract means can't be tortious interference. Imagine a world in which that were true. You could never have any communication with your contracted party about what their obligations are without potentially exposing yourself to claims, not just from the contracted party, but for any incidentally harmed or benefited third party who might be waiting in the wings like sold-out was here, and that, we'd submit, can't be the law. We don't see any case to support it. Counsel, before you sit down, I did have one other question. Not very much discussed in either side's briefs. What law applies to what claims here? That's a good question, Your Honor. Claims made both under California and Oregon law, and I'm not clear, I'm not clear which one should apply to which. So what we said in the brief is that the outcome should be the same because the elements of the tort claim are the same. Now, obviously, Oregon and California treat non-competes quite differently. From our vantage point, the only issue now that should be considered is whether there are arguments that AG can make that they are valid under either Oregon or California law. Unquestionably, they are. They're different. They're particulars. But because there is potential validity to this contract claim, merely asserting the contract right itself is not sufficient wrongful conduct. Well, I think your answer to my question is it doesn't matter. But that wasn't the question I asked. What claim applies to which, what law applies to which claims here? So the application group case is the case in the record that has the most information on the choice of law issues that I think we're aware of right now. And there, here's what I would say. The court evaluated a non-compete in a Maryland, a contract where Maryland was the choice of law involving a Maryland employer that entered into a non-compete with an employee. You had a California company that tried to hire the employee for work in California. And the court said, California has an overarching interest in this because it's a California employee who's protected by the statute and a California company protected by the statute. And therefore, in that analysis, we should override the choice of law provision and apply California law. What I would say here is we have some different circumstances. And I'm not prepared to take a position one way or the other on which law should apply, other than to note that we're trying to protect an Oregon company for an employment opportunity in Oregon. And that's a different fact pattern than what we had in the application group case. Okay. If you have one concluding thought, you're over your time at this point. Well, I'm sorry. The only thing I addressed is the selective waiver issue just because it was brought in just very quickly in one sentence. It doesn't make sense for a company to be compelled to enforce a non-compete against itself. And that's what the selective waiver clause is essentially, a theory is essentially asking the AG to do, enforce a non-compete against itself. And we don't believe that can be wrongful conduct. Thank you, Your Honor. Thank you, counsel. I think you have some time for rebuttal. Let's see. Thank you, Your Honor. I was just looking at the clock resetting. I wanted to address a couple of points that were raised by my colleague. First of all, he characterizes what happened as an antitrust claim with some tort claims that were repackaged. That's not actually what happened procedurally. What happened was we asserted an antitrust claim and intentional interference claims and unfair competition claims, and we also had two claims in the original complaint that sought declaratory judgment. And when we filed an amended complaint, all we did was remove the two declaratory judgment claims based on case law that they had raised suggesting that it was improper to raise a declaratory judgment claim against a third-party contract. But the intentional interference claims, the unlawful competition claims, those were all in the original complaint. They haven't been repackaged at all. It has been the same complaint the entire time with respect to those claims. The other point I wanted to raise was about the cases that counsel continues to rely on regarding employers looking to challenge the validity of non-compete agreements with prior employers. There are seven cases that they rely on. All seven cases, all of which are district court cases, none of them are precedential, trace back to a case called Defiance Hospital. And Defiance Hospital paved new ground by holding that a company could not challenge a non-compete agreement for an employee that they would like to hire. And Defiance Hospital did so, again, new cloth without... They relied on one Supreme Court opinion from Ohio that had nothing to do with that. But at most, what those cases stand for is the proposition that a party cannot seek a declaratory judgment that they've been... Declaratory judgment of invalidity, which is not what we seek to do here. We are seeking damages. We have an injury in fact. We are seeking relief that can be redressed by the court. I agree that a simple standing analysis here, just like in antitrust law or other areas of law, shows that we have been injured and we have Article III standing to bring those claims. And the fact that it's not a declaratory judgment case distinguishes all seven of those cases. By the way, all seven of those cases simply cite each other. There's no other law that those cases cite. They are a succinct package, a lineage of case law that is ungrounded from the District of Ohio in 2004. Excuse me. This is Judge Schroeder. Can you remind me again, what is the scope of the injunction that you're seeking? An injunction from them preventing artists from performing at sold-outs events in Oregon going forward, for example. I don't know that we have specific injunctive relief in there, but we are seeking an injunction from them continuing to cause the same type of harm that they have caused in the past, to sold-out. To sold-out, correct. Yeah, okay. We're not seeking a national injunction at this point. All we're seeking is, you have caused us harm, stop causing us the harm that you have caused us. That's correct. Why doesn't Oregon law apply to your claims then? I believe Oregon law does apply to our claim that we brought under Oregon law. We brought an intentional... I'm sure you must believe that or you wouldn't have brought it. My question is, why doesn't Oregon law apply to all your claims? You were trying to run a concert in Oregon and they apparently prevented you, the artists according to you, from performing there. Why should California law apply at all? I believe that their agreements are unlawful under California law. I know you believe that. That's not what I'm asking. Why should California law apply? Well, because they've... I mean, I think both laws should apply. They have committed tortious acts in California to prevent an Oregon company from retaining these artists. What tortious acts did they do in California? Enter into the contract? What else? Enter into the contract and then also via email or telephone from California direct artists not to perform and refuse to provide a waiver when requested with respect to SZA to sold out. Those were acts that were all taken in California. Okay. Yeah, you're well over your time. Okay. But we appreciate the helpful arguments from both counsel in this case. Thank you very much. The case just argued is submitted and we are adjourned for the day. Thank you. Thank you very much. Court for this session stands adjourned.
judges: Schroeder, Watford, Hurwitz